UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | |
| : | Case No. 21-cr-33 (CJN) |
| BRIAN J. BOOTH, : | |
| : | |
| Defendant. : | |

### UNITED STATES' MEMORANDUM IN AID OF SENTENCING

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in aid of sentencing. Based on the arguments set forth below, and those that may be made at the sentencing hearing, the Government requests that the Court impose a sentence of between 10 and 12 months' incarceration, consistent with the United States Sentencing Guidelines and the plea agreement between the parties.

**I.     Procedural Background**

On December 4, 2020, this Court issued a warrant to arrest the defendant, Brian Booth, after finding probable cause that he committed mail fraud in violation of 18 U.S.C. § 1341. The defendant was arrested and released subject to certain conditions. The parties entered into plea negotiations and on February 10, 2021, as part of a plea agreement, Mr. Booth entered a pre-indictment plea of guilty to one count of 18 U.S.C. § 1905 (Disclosure of Confidential Information), and signed a statement of offense detailing his criminal conduct. The defendant's sentencing hearing is scheduled for May 6, 2021.

**II.    Factual Background**

**a.  Conduct Included in the Statement of Offense**

1

The Federal Aviation Administration (FAA) issues certificates to licensed pilots and mechanics, which serve as evidence that the certified individual is authorized by the FAA to exercise piloting or aircraft maintenance privileges in the United States. The Transportation Security Administration (TSA) will notify the FAA when a pilot or mechanic has been deemed a security threat and will request that the FAA revoke the certificates issued to the pilot or mechanic. Booth is an employee in the Enforcement Division of the FAA, in the department that issues letters notifying a pilot or mechanic if his or her certificate has been revoked. He is responsible for sending the revocation letters which do not contain the basis for the TSA's security threat determination.

On July 13, 2020, Booth sent an envelope by FedEx overnight mail service to "Emily Haber" at 4645 Reservoir Road, Washington, D.C. 20007. The Embassy of the Federal Republic of Germany is located at that address and received the envelope. Emily Haber is the German Ambassador to the United States. Inside the envelope was a typed letter addressed to the "Director of Federal Intelligence Service." It stated, in-part:

> "I am an employee of the Federal Aviation Administration in Washington DC…The FAA and the Department of Homeland Security has been tracking a few suspicious people in the last three years … These people are consider [sic] terrorists…The problem right now is that the United States government is not doing a thing about this. If the United States won't do a thing about it, then I will! I have compiled a list of twenty five individuals and companies that are committing terrorist activities against your country! They work for the aviation industry. They are pilots and mechanics who do not go through security checks at airports…I have enclosed the list and the last page of information to pay me! I am selling this information. I am committing Treason and Espionage! I expect to be paid and to seek asylum to your country, no questions asked! The last page gives instructions on how to contact me and payment information."

The letter was signed "B.B."

Enclosed was a handwritten list of the names and addresses of 25 individuals. Following the list was a handwritten demand for $27.7 million dollars, and instructions for arranging payment. The list of individuals included persons whose certificates to exercise piloting or aircraft maintenance privileges in the United States had been revoked by the FAA.

Booth had access to the identity of these individuals because of the nature of his employment with the FAA. The identity of the individuals was not publicly available, and Booth was not authorized to release their names. Similar letters were sent to the French Embassy and the Embassy of the People's Republic of China. None of the embassies responded to Booth's demand.

### b. Additional Offense Conduct

The Government recently obtained information indicating that Booth sent a similar threat letter to the Embassy of Japan in July 2020, and a follow-up letter on April 12, 2021, less than one month before his sentencing hearing and two months after he entered his guilty plea. Specifically, on April 23, 2021, the Embassy of Japan reported to the Metropolitan Police Department that they had received a letter from "B.B." postmarked April 12, 2021, which stated, in-part, "I sent your office a package in July 2020. The package contained names and companies that are terrorists…I have asked for Payment for providing illegal information that I have obtained." The April 12, 2021, letter contained a demand for $25 million, paid by check and sent to a mailbox in a UPS store.  Further investigation revealed that Booth had rented a mailbox at the same UPS store, using the address he reported to the United States Probation Office.  The undersigned learned of this conduct on April 27, 2021, and brought this information to the attention of defense counsel on April 28, 2021.

### III.  Applicable United States Sentencing Guidelines Range

Title 18, United States Code, Section 1905, carries a maximum penalty of up to one year, and anyone convicted under the statute "shall be removed from office or employment." With a maximum penalty of one year, it is a Class A Misdemeanor, and the Sentencing Guidelines apply. 18 U.S.C. § 3559(a)(6); U.S.S.G. § 1B1.2. The parties agree that pursuant to U.S.S.G. §§ 2H3.1(c)(1), cross referencing § 2C.1.1, the base offense level is 14. The Government agrees that a 2-level reduction will be appropriate, pursuant to U.S.S.G. § 3E1.1, if Booth continues to accept responsibility for his conduct. At an adjusted offense level of 12, the Guidelines sentencing range is in Zone C, 10-16 months' incarceration.[1]

### IV.     Restitution, Forfeiture and Fine

There is no victim which suffered a pecuniary loss. Accordingly, the Government does not propose a forfeiture or restitution amount. The Presentence Investigation Report states that the defendant does not appear to have the ability to pay a fine, and the Government has no information to the contrary.

### V.     A Guidelines Sentence is Appropriate

This Court must consider the factors set forth in 18 U.S.C. § 3553 when deciding what sentence to impose. These considerations include the nature and circumstances of the offense, and the history and characteristics of the defendant. Here, a guidelines sentence of between 10 months' incarceration and the statutory maximum of 12 months' incarceration appropriately reflects the seriousness of Booth's crime. The defendant's conduct compromised sensitive information and

---

[1] A draft version of the Presentence Investigation Report included an offense level increase for the value of the payment from the foreign officials that Mr. Booth demanded. The Government's sentencing calculation does not include this adjustment in its calculation in recognition of the unusual nature of Booth's solicitation, in which he was demanding payment for information already disclosed. As of this filing, a final Presentence Investigation Report has not been circulated.

misused personally identifiable information that was entrusted to him.

The Government is deeply concerned that the defendant's conduct appears to be ongoing, and more widespread than initially understood. Even if there have been no new unlawful disclosures, the defendant's letter of April 12, 2021, is a flagrant violation of the spirit of the plea agreement and this Court's Order setting the conditions of the defendant's release following arrest, which required him not to commit any new offenses.[2] Such action demonstrates a disrespect for the rule of law, one of the factors the Court should consider when determining what sentence to impose. 18 U.S.C. § 3553(a)(2)(A).

In the plea agreement between the parties, and before learning of the new offense conduct, the United States agreed not to oppose a variance from the guidelines if sought by the defendant. Ultimately, there appears to have been no actual harm caused by Booth's conduct, which was not perceived as a credible extortion attempt by the embassies receiving his letters. He also has a history of physical and mental illness that may have factored into his behavior, including the April 12, 2021, letter. A sentence which includes a significant term of probation may afford the defendant access to the mental health services necessary to protect the public from further crimes.

## VI. Conclusion

Accordingly, for the reasons stated above, the Government respectfully requests that the Court impose a sentence between 10 and 12 months' incarceration.

---

[2] The Government is not asking the Court to change the conditions of Booth's release at this time because sentencing is set for next week. Should sentencing be continued, then additional action, including the termination of Booth's employment, might be necessary to protect the public from future harm.

Respectfully Submitted,

CHANNING D. PHILLIPS
Acting United States Attorney for the
District of Columbia

By: */s/ Elizabeth Aloi*
Elizabeth Aloi
NY Bar No. 4457651
Assistant United States Attorney
Public Corruption and Civil Rights Section
555 Fourth Street, NW, 5th Floor
Washington, DC 20530
(202) 695-0610