UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| v. | ) | CR. NO. 21-CR-33 (CJN) |
| BRIAN BOOTH | ) | |
| | ) | |

## MEMORANDUM IN AID OF SENTENCING

Brian J. Booth was a law-abiding citizen with no prior criminal history before the instant offense. Under the weight of growing financial bills, health challenges, and overall stress from the pandemic, he thought of a desperate and futile attempt to obtain money. Now, he is unemployed and continues to face financial challenges. Mr. Booth will appear on May 6, 2021 by videoconference for sentencing. Based on the nature and circumstances of the offense, Mr. Booth's background, his acceptance of responsibility, and the relevant sentencing factors pursuant to 18 U.S.C. § 3553(a), the defense respectfully requests a sentence of probation, which is fair and reasonable.

## Case Background

On December 7, 2020, Mr. Booth was arrested and released on his personal recognizance. After a few weeks of plea negotiations, on January 28, 2021, a one-count Information was filed against Mr. Booth, charging him with Disclosure of Confidential Information, in violation of 18 USC § 1905, to which he pled guilty on February 10, 2021. Mr. Booth accepts responsibility for the offense and did not put the government to its burden of proof at trial.

1

**Sentencing Law**

The era of binding guidelines ended sixteen years ago, when the Supreme Court held that "the Federal Sentencing Reform Act of 1984…ma[de] the Guidelines effectively ***advisory***." *United States v. Booker*, 543 U.S. 220, 245 (2005) (emphasis added). Under *Booker*, the "district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." *Id.* at 264 (citing *See* 18 U.S.C. §§ 3553(a)(4), (5)). While holding that district courts should still consider the Guideline calculations and ranges for sentencing purposes, the Supreme Court in *Booker* held that courts must consider <u>all</u> the purposes of sentencing set forth in 18 U.S.C. § 3553(a). Overall, in light of *Booker*, courts must treat the Guidelines as <u>one</u> among several of the sentencing factors.

18 U.S.C. § 3553(a) provides that the Court must consider:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;

(2) the need for the sentence imposed—

(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for—

(A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines— (i)issued by the Sentencing Commission pursuant to section 994(a)(1) of title 28, United States Code, subject to any amendments made to such guidelines by act of Congress

>> (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28); and (ii) that, except as provided in section 3742(g), are in effect on the date the defendant is sentenced; …

> (5) any pertinent policy statement— …

> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

> (7) the need to provide restitution to any victims of the offense.

Several years after *Booker*, the Supreme Court made clear that the "Court's overarching duty" is to "'impose a sentence sufficient, but not greater than necessary,'" *Pepper v. United States*, 562 U.S. 476, 493 (2011) (quoting 18 U.S.C. § 3553(a)), to comply with "the four identified purposes of sentencing: just punishment, deterrence, protection of the public, and rehabilitation," *Dean v. United States*, 137 S. Ct. 1170, 1175 (2017); *see also* 18 U.S.C. § 3553(a)(2). In addition, the sentencing court may consider any "information concerning the background, character, and conduct" of the defendant, including age, educational and vocational skills, mental and emotional conditions, and lack of guidance as a youth. 18 U.S.C. § 3661.

Congress has further provided that:

> [t]he court, in determining whether to impose a sentence of imprisonment, and, if a term of imprisonment is to be imposed, in determining the length of the term, shall consider the factors set forth in Section 3553(a) to the extent that they are applicable, *recognizing that imprisonment is not an appropriate means of promoting correction and rehabilitation*.

18 U.S.C. § 3582(a) (emphasis added). With that limitation and considering all of the purposes of sentencing, the Court must impose a sentence that is "sufficient, *but not greater than necessary*, to comply with the purposes [of sentencing]." *Id*. § 3553(a) (emphasis added).

Since *Booker*, the Supreme Court reaffirmed that the Sentencing Guidelines are merely one factor to be considered by district courts when fashioning a reasonable sentence and that the

Sentencing Guidelines are not to be weighed more heavily than other sentencing factors. *See Rita v. United States*, 551 U.S. 338 (2007); *Gall v. United States*, 552 U.S. 38 (2007). A sentencing court shall not simply presume that a sentence within the Guideline range is automatically reasonable or that a sentence within the Guideline range is more reasonable than a sentence outside of the Guideline range. *Rita*, 551 U.S. at 338; *Gall*, 552 U.S. at 46. The sentencing court further shall not presume that a sentence outside of the Guidelines range is unreasonable. *Id.* By considering the Sentencing Guidelines along with all of the factors set forth 18 U.S.C. § 3553(a), "the sentencing court subjects the defendant's sentence to the thorough adversarial testing contemplated by federal sentencing procedure." *Rita*, 551 U.S. at 351.

It is critical for sentencing courts to consider all sentencing factors and to not give undue weight to the Sentencing Guidelines because, as the Supreme Court has long emphasized that "'[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue.'" *Gall*, 552 U.S. at 52 (quoting *Koon v. United States*, 518 U.S. 81, 113 (1996)); s*ee also United States v. Faison*, No. GJH-19-27, 2020 U.S. Dist. LEXIS 27643, at *4-5 (D. Md. Feb. 18, 2020)("But if judges are not careful, a rote application of the Guidelines can turn what is often a life-defining moment for the defendant into a check-the-box, formulaic calculation devoid of the individualized sentencing we strive for.").

Overall, judges are encouraged to resist "anchoring" the sentence on the guideline numbers. "Anchoring is a cognitive bias that describes the human tendency to adjust judgments or assessments higher or lower based on previously disclosed external information - the 'anchor.' Studies demonstrate 'that decisionmakers tend to focus their attention on the anchor value and to

4

adjust insufficiently to account for new information.'" Mark W. Bennett, *Confronting Cognitive "Anchoring Effect" and "Blind Sot" Biases in Federal Sentencing: A Modest Solution for Reforming a Fundamental Flaw*, 104 J. Crim. L. & Criminology 489, 495 (2014) (citations omitted).

> It is important to distinguish the guidelines' intended, salutary effect - promoting consistency and proportionality in sentencing - from the unintended anchoring effect that the guidelines can exert. … Anchoring leads to cognitive error not insofar as judges intentionally use the guidelines in an advisory fashion, but instead when judges irrationally assign too much weight to the guidelines range, just because it offers some initial numbers.

*Id.* at 524 (inner quotation marks and citation omitted); *see also United States v. Docampo*, 573 F.3d 1091, 1105 n.5 (11th Cir. 2009) (Barkett, J., concurring and dissenting) ("Not only have district courts now become used to relying on [the Guidelines], but the Guidelines inevitably have a considerable anchoring effect on a district court's analysis").

## Argument

For the following reasons, a sentence of probation is the only sentence that is not greater than necessary, yet sufficient, for the purposes of sentencing.

### I.      The Nature and Circumstances of the Offense

The offense conduct is detailed in the Statement of Facts and the Final Presentence Investigation Report.  In short, Mr. Booth sent letters to embassies, disclosing confidential information to obtain money.  (ECF No. 20, Final Presentence Investigation Report ("PSR") ¶¶ 11-13).

The government informed the defense of additional offense conduct.  Gov't Sent'g Mem., ECF No. 19, p. 3.  While the letter was postmarked April 2021,[1] the letter was not written

---

[1] The government notes that the envelope was postmarked April 12, 2021.  In the picture provided to the defense, it appears the envelope was postmarked April 5, 2021.

at that time. After further discussion, the parties acknowledge that at his time, it is unclear how many letters were sent and will eventually be recovered. Undersigned counsel understands that all of the letters were written prior to the arrest in this case. Overall, the letters are part of one scheme and course of conduct that took place prior to his arrest last year. It is clear that Mr. Booth obtained no money in response to the requests. He was terminated from the Federal Aviation Administration (FAA) on or about March 26, 2021 as result of his conduct. There is no threat that Mr. Booth poses.

## II.     Mr. Booth's History and Characteristics

Mr. Booth's history and characteristics show that the offense conduct was aberrant behavior. He has lived a law-abiding life with no prior convictions. Mr. Booth grew up as a child of a military parent and moved frequently because of his father's military career. He spent his formative years on military bases and completed high school in the Netherlands. (PSR ¶¶ 48, 59). He had been steadily employed at the FAA as a legal assistant for the last 10 years. (PSR ¶ 63).

The year 2020 did not start well for Mr. Booth. In January 2020, he began suffering excruciating neck pain that made it difficult to concentrate and work. The pain shot down his right thigh and it was difficult to grip cups, paper, and pens with his right hand. He began physical therapy for three months until late March or early April 2020. Prior to this, he was receiving constant calls from debt collectors and debt collection notices which increased by March 2020. Then, the COVID-19 pandemic hit. The pandemic understandably caused severe economic and psychological stress to millions of Americans. By April 2020, "[t]he US economy lost 20.5 million jobs …, the Bureau of Labor Statistics said Friday — by far the most sudden

and largest decline since the government began tracking the data in 1939."[2] One month into the pandemic, "[t]he coronavirus pandemic…caus[ed] nearly 9 in 10 Americans to feel anxious about money," with nearly 50% of people being worried about paying bills and more than a quarter being concerned about paying rent.[3]  A few months later, while still suffering from worsening neck pain and increasing debt collection calls, Mr. Booth wrote the letters in July 2020.  He continued to suffer from excruciating neck pain until his surgery in October 2020. He ended the year with an arrest, a looming eviction, and an impending unemployment.  The debt collectors are still calling.

Mr. Booth has dealt with mental health challenges and has taken steps to address them in the past.  (PSR ¶ 55).  In spite of this, the pandemic has had a serious impact on those suffering with mental health challenges across the nation.  "Three months into the coronavirus pandemic, the country [wa]s on the verge of another health crisis, with daily doses of death, isolation and fear generating widespread psychological trauma."[4] Furthermore, "[n]early 7 in 10 employees indicated in a survey … that the coronavirus disease 2019 (COVID-19) pandemic is the most stressful time of their entire professional career, which has aligned with stark increases in new prescriptions of antidepressant, antianxiety, and anti-insomnia medications."[5]

---

[2]  Anneken Tappe, CNN Business, *Record 20.5 million American jobs lost in April. Unemployment rate soars to 14.7%*, Updated on Friday, May 8, 2020, https://www.cnn.com/2020/05/08/economy/april-jobs-report-2020-coronavirus/index.html (last accessed on April 26, 2021).

[3] Michelle Fox, CNBC, *The coronavirus pandemic is causing nearly 9 in 10 Americans to feel anxious about money*, April 16, 2020, https://www.cnbc.com/2020/04/16/coronavirus-crisis-causing-financial-stress-for-near-9-in-10-americans.html (last accessed on April 27, 2021).

[4] William Wan, *The coronavirus pandemic is pushing America into a mental health crisis*, May 4, 2020, Washington Post, https://www.washingtonpost.com/health/2020/05/04/mental-health-coronavirus/ (last accessed on April 28, 2021).

[5] Matthew Gavidia, *How Has COVID-19 Affected Mental Health, Severity of Stress Among Employees?*, AJMC, April 20, 2020, https://www.ajmc.com/view/how-has-covid19-affected-mental-health-severity-of-stress-among-employees (last accessed April 28, 2021).

Medical challenges, which have plagued Mr. Booth from an early age, were also a factor around the time of the conduct in this case. At the time Mr. Booth wrote the letters, he suffering from excruciating neck pain and was scheduled for major surgery on his neck in October 2020. (PSR ¶ 52). In addition, he already had mounting bills and was in a deficit every month. (PSR ¶¶ 67-72).

Notably, Mr. Booth had worked at the FAA for nearly a decade without any of these actions taking place and it was not until the pandemic that this behavior happened. Mr. Booth accepts responsibility for his actions and feels great shame and remorse for his conduct. He does not blame the pandemic: however, the defense requests that this Honorable Court consider the impact of the pandemic in this case. He is currently unemployed and has had difficulty securing another job and is still trying to find a place to live.

### III.  The Purpose of Sentencing Will be Accomplished with a Sentence Probation.

When sentencing a defendant, the Court must treat the Guidelines "as one factor among several" that § 3553(a) requires the Court to consider. *Kimbrough v. United States*, 552 U.S. 85, 90 (2007). As stated above, courts should resist anchoring a sentence to the guideline numbers. *See Docampo*, 573 F.3d at 1105 n.5 (Barkett, J., concurring and dissenting) ("Not only have district courts now become used to relying on [the Guidelines], but the Guidelines inevitably have a considerable anchoring effect on a district court's analysis"). Because the Guidelines merely reflect a "wholesale" view "rough[ly] approximat[ing] . . . sentences that might achieve § 3553(a)'s objectives," *Booker* and § 3553(a) require the Court to tailor an individualized sentence that actually does achieve § 3553(a)'s objectives in the case before it. *Rita*, 551 U.S. at 348, 350. This Court may not presume that a Guideline sentence is reasonable and should, instead, consider whether or not the applicable Guidelines sentence properly reflects § 3553(a)

considerations and whether "the case warrants a different sentence regardless." *Id.* at 351. Indeed, "it remains the judge's duty to tailor every sentencing to the case and defendant at hand," regardless of the guidelines range. *United States v. Sabillon-Umana*, 772 F.3d 1328, 1330 (10th Cir. 2014) (Gorsuch, J.). Recently, a U.S. District Court Judge explained the following:

> During the sentencing hearing, the lawyers and the judge discuss the appropriate sentence, often at great length, but after the judge announces a decision, that judge, the lawyers, and the staff move on to the next case; the hearing and outcome soon fade into distant memory. Meanwhile, for the defendant, the torture of a monotonous existence begins, while life for his family moves forward without him. For him, every day, month and year that was added to the ultimate sentence will matter. The difference between ten and fifteen years may determine whether a parent sees his young child graduate from high school; the difference between ten and fifteen months may determine whether a son sees his sick parent before that parent passes away; the difference between probation and fifteen days may determine whether the defendant is able to maintain his employment and support his family. **Thus, it is crucial that judges give careful consideration to every minute that is added to a defendant's sentence. Liberty is the norm; every moment of incarceration should be justified.**

*United States v. Faison*, No. GJH-19-27, 2020 U.S. Dist. LEXIS 27643, at *3-4 (D. Md. Feb. 18, 2020) (emphasis added).

    a. *The Kinds of Sentences Available and the Sentencing Range Established*

Since Mr. Booth pled guilty to a misdemeanor, he is eligible for a sentence of probation for up to five years. 18 USC § 3561(c)(2). The Probation Office has also determined that because the applicable guideline range is in Zone A, a sentence of imprisonment is not required. (PSR ¶ 74a).

    b. *The Kinds of Sentence and the Sentencing Range Established*

The Probation Office calculated an advisory guideline range of 0 to 6 months based on zero criminal history points and an offense level of 7. (PSR ¶¶ 19-20, 74). The government contends that the applicable guideline range is 10-16 months, based on the cross reference from U.S.S.G. §§ 2H3.1(c)(1), cross referencing § 2C.1.1. Upon further review, the defense argued to

the Probation Office that the cross-reference did not apply because 2H3.1(b)(1)(B) takes into consideration the economic aspect of the criminal offense of disclosure of information. Notably, Amendment 628 to § 2H3.1 states that "[t]he Commission determined that a base offense level of level *9 is too severe for the misdemeanor offenses* contained in 26 U.S.C. §§ 7213A (Unauthorized Inspection) and 7216 (Unauthorized Disclosure), and the three-level decrease addresses this concern." Am. 628 (emphasis added). The offense at issue here, 18 U.S.C. § 1905 is very similar to 26 U.S.C. § 7216 since both involve unauthorized disclosure. In the Final Presentence Investigation Report, the Probation Office agreed that the cross-reference did not apply. (PSR, p. 18). The Sentencing Commission also has not "a considerably larger proportion of economic crime offenders (20.8%) were sentenced to probation only compared to all federal offenders (6.9%)."[6] Hence, the appropriate guideline range is 0 to 6 months. If the Court disagrees, the defense requests that this Honorable Court vary outside of the guidelines in light of his history and characteristics and his first time offender status to Zone A and impose a sentence of probation.

    c. <u>Any Pertinent Policy Statement</u>

"The Commission shall insure that the guidelines reflect the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant is a first offender…." 28 U.S.C. § 994(j). In light of Mr. Booth's first offender status, a prison sentence would not be appropriate here. The Sentencing Commission has noted that offenders who fall

---

[6] *See* U.S. Sent'g Comm'n, *What Does Federal Economic Crime Really Look Like?*, (Jan. 2019) p. 27, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2019/20190130_Econ-Crime.pdf (last accessed on April 29, 2021).

into Criminal History Category I are less likely to receive a straight prison sentence. [7]

    d. *A Sentence of Probation Would Provide Just Punishment and Protect the Public.*

18 U.S.C. § 3553(a)(2)(A) and (C) provide that the Court must assess "the need for the sentence imposed— . . . to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense" and "to protect the public from further crimes of the defendant." A sentence of probation would provide just punishment for the offense and protect the public. The purposes of sentencing can be accomplished with Mr. Booth remaining in society and being on probation and complying with any further conditions that the Court deems appropriate. While "custodial sentences are qualitatively more severe than probationary sentences of equivalent terms," "[o]ffenders on probation are nonetheless subject to several standard conditions that substantially restrict their liberty." *Gall*, 552 U.S. at 48. "A sentence of probation rather than incarceration can work to promote the sentencing goal of respect for the law by illustrating a rejection of the view that the law is merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing." *United States v. Bennett*, No. 8:07CR235, 2008 U.S. Dist. LEXIS 45302, at *12 (D. Neb. May 30, 2008) (citing *Gall*, 552 U.S. at 99).

A sentence of probation itself is a "'substantial restriction of freedom.'" *Gall*, 552 U.S. at 44 (citation omitted). As the Supreme Court has explained:

> We recognize that custodial sentences are qualitatively more
> severe than probationary sentences of equivalent terms. Offenders
> on probation are nonetheless subject to several standard conditions
> that substantially restrict their liberty. *See United States v.
> Knights*, 534 U.S. 112, 119, 122 S.Ct. 587, 151 L.Ed.2d 497
> (2001) ("Inherent in the very nature of probation is that

---

[7] *See* U.S. Sent'g Comm'n, *Recidivism and the "First Offender,"* (May 2004) p. 10, available at https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_First_Offender.pdf (last accessed on April 29, 2021).

> probationers 'do not enjoy the absolute liberty to which every citizen is entitled' " (quoting *Griffin v. Wisconsin*, 483 U.S. 868, 874, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987))). Probationers may not leave the judicial district, move, or change jobs without notifying, and in some cases receiving permission from, their probation officer or the court. They must report regularly to their probation officer, permit unannounced visits to their homes, refrain from associating with any person convicted of a felony, and refrain from excessive drinking. USSG § 5B1.3. Most probationers are also subject to individual "special conditions" imposed by the court.

*Id*. at 48 (footnote omitted). Hence, the public will be protected by Mr. Booth being supervised on probation.

    e.  *A Sentence of Probation Would Provide Adequate Deterrence*

18 U.S.C. § 3553(a)(2)(B) provides that the Court must assess "the need for the sentence imposed— . . . to afford adequate deterrence." Mr. Booth has lost his secure government job which he has held for approximately 10 years. He will face challenges in trying to obtain employment because of this case and already has received negative publicity. He will be unable to obtain government employment. Those factors are adequate deterrence. *See, e.g., United States v. Olis*, 2006 WL 2716048, at *13 (S.D. Tex. Sept. 22, 2006) (granting substantial variance in part because "the attendant negative publicity, the loss of his job and accounting and law licenses, and the need to provide support for his family will provide adequate deterrence against any potential future criminal conduct."). No term of imprisonment is necessary to prevent Mr. Booth from committing similar crimes in the future.

    f.  *A Sentence of Probation Would Provide Mr. Booth with Treatment.*

18 U.S.C. § 3553(a)(2)(D) provides that the Court must assess "the need for the sentence imposed— . . . to provide the defendant with the needed educational and vocational training, medical care, or other correctional treatment in the most effective manner." A sentence of

imprisonment would impede Mr. Booth's needs for medical care and employment. He has had a long history of surgeries which have been paid for by his own medical insurance. If incarcerated, any of his future medical needs would place a burden on the medical resources of the BOP and communities, which are already being burdened by the COVID-19 pandemic.

"Any term of imprisonment in this case would be counter effective by depriving society of the contributions of the Defendant who . . . understands the consequences of his criminal conduct and is doing everything in his power to forge a new life." *Gall*, 552 U.S. at 44 (citation omitted) (quoting district court). As a result, Mr. Booth requests a sentence of probation. The requested sentence is not greater than necessary, and is sufficient for the purposes of sentencing.

## Conclusion

For the foregoing reasons, and for any other reasons set forth at the sentencing hearing, a sentence of probation sufficiently addresses Mr. Booth's conduct as well as other factors pursuant to 18 U.S.C. § 3553(a).

Respectfully submitted,

A.J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
Ubong E. Akpan
Assistant Federal Public Defender
625 Indiana Ave., N.W., Suite 550
Washington, D.C. 20004
(202) 208-7500